AHLBRECHT & SON *v.* UNITED STATES (No. 643). MENZEL & CO. *v.* UNITED STATES (No. 644).[1]

1. STATUTORY CONSTRUCTION.

By a familiar rule, a statute that has been reenacted takes the established construction of that statute, but it is always open to the court to determine whether any change that may appear in new phraseology employed was meant to compel a different construction, the prime purpose always being to get at the real intent of the legislature.

2. HERRINGS IN TINS, SMOKED OR PICKLED.

In paragraph 272, tariff act of 1909, Congress has correlated herrings of all kinds, and has included there herrings, pickled or salted, smoked or kippered, with the knowledge, it is to be presumed, that kippered herring can only be imported as fish in tins and has so made of the terms employed a designation more specific, than "all other fish (except shellfish) in tin packages," paragraph 270. The importations are dutiable under paragraph 272.—United States *v.* Rosenstein (T. D. 31358) distinguished.

United States Court of Customs Appeals, January 23, 1912.

APPEAL from Board United States General Appraisers, G. A. 7198 (T. D. 31474).

[Reversed.]

*Comstock & Washburn* (*Albert H. Washburn* of counsel) for appellants.

*Wm. L. Wemple,* Assistant Attorney General (*Chas. D. Lawrence* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:.

These two appeals were heard together, and involve the dutiable classification of herring. The Ahlbrecht appeal covers pickled herring packed in tins, and the Menzel appeal, smoked herring packed

---

in tins. Duty was assessed thereon at 30 per cent under paragraph 270, tariff act of 1909, as "all other fish (except shellfish) in tin packages." Paragraph 270 reads:

270. Fish (except shellfish) by whatever name known, packed in oil, in bottles, jars, kegs, tin boxes, or cans, shall be dutiable as follows: When in packages containing seven and one-half cubic inches or less, one and one-half cents per bottle, jar, keg, box, or can; containing more than seven and one-half and not more than twenty-one cubic inches, two and one-half cents per bottle, jar, keg, box, or can; containing more than twenty-one and not more than thirty-three cubic inches, five cents per bottle, jar, keg, box, or can; containing more than thirty-three and not more than seventy cubic inches, ten cents per bottle, jar, keg, box, or can; all other fish (except shellfish) in tin packages, thirty per centum ad valorem; fish in packages, containing less than one-half barrel, and not specially provided for in this section, thirty per centum ad valorem; caviar, and other preserved roe of fish, thirty per centum ad valorem.

The appellants claim the merchandise dutiable under the *eo nomine* designation of paragraph 272, reading:

272. Herrings, pickled or salted, smoked or kippered, one-half of one cent per pound; herrings, fresh, one-fourth of one cent per pound; eels and smelts, fresh or frozen, three-fourths of one cent per pound.

The board sustained the action of the collector, General Appraisers Chamberlain and Fischer concurring and General Appraiser McClelland dissenting from the conclusion of the majority.

A brief history of the tariff acts in relation to fish in tins as contrasted with *eo nomine* provision for herrings may aid in solving the question involved. The tariff act of 1890 contained three provisions which were deemed relevant, reading as follows:

295. Fish in cans or packages made of tin or other material, except anchovies and sardines and fish packed in any other manner, not specially enumerated or provided for in this act, thirty per centum ad valorem.

296. Cans or packages, made of tin or other metal, containing shellfish admitted free of duty, not exceeding one quart in contents, shall be subject to a duty of eight cents per dozen cans or packages; and when exceeding one quart, shall be subject to an additional duty of four cents per dozen for each additional half quart or fractional part thereof: *Provided*, That until June thirtieth, eighteen hundred and ninety-one, such cans or packages shall be admitted as now provided by law.

294. Herrings, pickled or salted, one-half of one cent per pound; herrings, fresh, one-fourth of one cent per pound.

The question arose in the case of *In re* Johnson (56 Fed. Rep., 822) as to whether various kinds of herring packed in hermetically sealed tin cans and known as "Digby chicks," "preserved bloaters," "divided herring," "kippered herring," "fresh herring," "deviled herring," and "herring in tomato sauce," were dutiable under paragraph 294 as herrings, pickled or salted, or under paragraph 295 as fish in cans. The question was decided by Lacombe, Circuit Judge, in language which we quote so far as pertinent to the present issue:

Neither construction of this paragraph 295 is altogether satisfactory. It is extremely obscure, but upon considering the various interpretations of it which have been suggested I adhere to the view that it is to be construed as follows: There should be

laid a duty of 30 per cent ad valorem upon (*a*) fish in cans or packages made of tin or other material (except anchovies and sardines), and (*b*) fish packed in any manner other than such as has been heretofore specially enumerated or provided; the apparent intent being not so much to lay the duty upon fish, but to lay the duty upon the tin can that brought the fish in, and I am persuaded to take that view of the phraseology of the immediately succeeding section, 296.

Paragraph 296 was not reenacted in the revision of 1894, and has not since appeared in the tariff acts. Notwithstanding this omission, and the omission apparently not having been called to the attention of the court, the court, in Kauffman *v.* United States (99 Fed. Rep., 430), held that fish in tins pickled in vinegar and known as "Bismarck herrings" were dutiable under the provision for "all other fish in tin packages" under paragraph 258 of the act of 1897. The court said:

The Board of General Appraisers cited the decision of Judge Lacombe *In re* Johnson (56 Fed. Rep., 822), and affirmed the decision of the collector. I think Congress intended, by the provision for a duty of 30 per cent on "all other fish, in tin packages," to provide that any fish imported in such packages should pay the duty of 30 per cent, irrespective of the kind of fish therein. As Judge Lacombe says in the Johnson case, "the apparent intention is not so much to lay the duty on fish, but to lay the duty upon the tin cans that brought the fish in."

The case was followed again by the Circuit Court of Appeals for the Seventh Circuit in Benson *v.* United States (159 Fed. Rep., 118), in which case the reasoning is not extended beyond saying that—

Ad valorem duty imposed by paragraph 258 for "other fish" extends only to goods "in tin packages," while the fish subject to the specific duties of paragraphs 260 and 261 are not so limited, implying other forms of packages. Thus the legislative intent appears to require the ad valorem and higher duty when imported in tin, as well defined in Kauffman Bros. *v.* United States (99 Fed. Rep., 430), approving the cognate ruling *In re* Johnson (56 Fed. Rep., 822.)

It will be observed that the two last-cited cases reach the conclusion largely upon the authority of *In re* Johnson, and that the provision of the statute upon which *In re* Johnson in part at least rested had been eliminated from the tariff act under discussion in these cases.

The contention is made, however, that these cases should be deemed controlling for the reason that Congress in enacting the tariff law of 1909 should be deemed to have enacted it with the judicial construction which had been placed upon the previous statute. The rule that the presumption that a reenactment of a statute does not ordinarily change its meaning or construction, and that when a statute is reenacted in the same or substantially the same terms as one which has received a previous judicial construction, such reenactment will be ordinarily deemed to have read into its provisions the construction so previously given to it, is well understood. See 2 Lewis's Sutherland Statutory Construction (par. 403), and Endlich Statutory Construction (par. 368).

This rule, however, leaves it always open for the court to determine whether any change in the phraseology employed was intended

to do away with the construction which had been given to the prior statute, the prime purpose always being to get at the real intent of the legislature.

This question has not, as it is now presented, been heretofore considered by this court. It is true that in the case of United States v. Rosenstein (T. D. 31358) this section of the act was considered. In that case the question was whether kippered herring should be assessed for duty under paragraph 272 or under paragraph 270. The question for consideration by this court, however, was a question of fact. The board had previously ruled that the only kippered herring known to commerce prior to the tariff act of 1909 was kippered herring in tins, and that by the introduction of the words "kippered herring" in section 272 it must be inferred that the word "kippered" as applied to herrings was more specific than the provision for "fish in tins" contained in section 270. The question presented in the Rosenstein case was whether the Government in a new case had shown that as a matter of fact the board was in error in the previous case, known as Vandegrift's case (T. D. 30528), in finding that kippered herrings other than those in tins were unknown to commerce at the time of the enactment of the tariff law of 1909. This court determined the case as thus presented, and found the fact to be that kippered herring other than in tins was not known to commerce. This was as far as it was necessary to go in the case, and in fact determined the only question presented in the case.

But the question is now presented and is suggested in the opinion of General Appraiser McClelland as to whether the fact of the introduction of the word "kippered" does not have a broader significance and does not indicate a purpose on the part of Congress to subject all the herrings in the same classification to the rate of duty prescribed in paragraph 272. With possibly a less degree of force, but nevertheless with very great force, it can be said that when Congress, dealing with herrings, pickled, salted, smoked, or kippered, with a knowledge that they were introducing into that paragraph and in correlation with the other classes described a kind of herring which could be introduced into the commerce of the country only in tin cans, provided a rate of duty for all alike, it must be inferred that this was intended as a more specific designation and description of the article than is found in the general provision "all other fish (except shellfish) in tin packages."

A careful consideration of the case has led us to the view that such is the proper construction of this paragraph, and that, as between the two contrasting provisions, it appearing that Congress is dealing with a kind of fish which at least in part, namely, when kippered, would come technically within the first description, yet has correlated herrings of all kinds and included in the one paragraph

herrings, pickled or salted, smoked or kippered, with the presumed knowledge on the part of Congress that kippered herring can be imported only as fish in tins, the intent is to be gathered to make herrings, pickled, salted, smoked, or kippered a more specific designation than that for "all other fish (except shellfish) in tin packages."

It follows that the cases cited under the previous tariff acts are not controlling, and that the protests in these cases should be sustained and the decision of the board *reversed.*